# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANGEL MEDINA,<br><br>    Plaintiff,<br><br>    v.<br><br>DISTRICT OF COLUMBIA,<br><br>    Defendant. | Civil Action No. 97-594 (JMF) |

## MEMORANDUM OPINION

On July 29, 2008, following a jury trial, a verdict was rendered in favor of plaintiff and against the District of Columbia ("the District") in the amount of $180,000.00 with interest, attorney's fees and costs. See Judgment [#132]. On July 1, 2011, the court of appeals ordered this Court to require plaintiff to either accept a $90,000 remittitur or a new trial. Medina v. District of Columbia, 643 F.3d 323, 330 (D.C. Cir. 2011). Plaintiff accepted the remittitur on July 8, 2011. Praecipe [#170]. The only issue remaining before this Court is Plaintiff's Motion for Attorney's Fees [#173].

## DISCUSSION

I.    <u>Plaintiff is Entitled to an Award of Attorney's Fees</u>

Attorney's fees may be awarded to a plaintiff who prevails in an action brought under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e-5(k).[1] "The purpose of this provision is to encourage private litigants to act as 'private attorneys general' on behalf of

---

[1] All references to the United States Code or the Code of Federal Regulations are to the electronic versions that appear in Westlaw or Lexis.

enforcement of civil rights laws." Palmer v. Rice, No. 76-CIV-1439, 2005 WL 1662130, at *9 (D.D.C. July 11, 2005) (quoting Laffey v. Nw. Airlines, Inc., 746 F.2d 4, 11 (D.C. Cir. 1984)) (internal quotations omitted). Furthermore, to safeguard "'effective access to the judicial process' for persons with civil rights grievances . . . a prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" Turner v. District of Columbia Bd. of Elections and Ethics, 354 F.3d 890, 895 (D.C. Cir. 2004) (internal quotations and citations omitted).

At a hearing held on January 31, 2012, the defendant conceded that plaintiff is entitled to an award of fees based on the 2011 Laffey[2] rates. Thus, the only question presented is whether the defendant's claim that plaintiff is seeking compensation for unsuccessful efforts should modify the award of those fees.

II.  Plaintiff is Not Entitled to Compensation for Efforts Unrelated to His Success

   A.  Controlling Authority as to Unsuccessful Claims

The Supreme Court recently considered the issues presented by a plaintiff who ultimately prevailed yet nevertheless asserted claims that were unsuccessful:

> [I]n the real world, litigation is more complex, involving multiple claims for relief that implicate a mix of legal theories and have different merits. Some claims succeed; others fail. Some charges are frivolous; others (even if not successful) have a reasonable basis. In short, litigation is messy, and courts must deal with this untidiness in awarding fees.

Fox v. Vice, 131 S.Ct. 2205, 2214 (2011).

---

[2] The Laffey matrix provides a fee schedule for attorneys based on their years of experience, adjusted upward by changes in the Consumer Price Index. The Laffey rates have been awarded in Title VII cases. E.g., Hansson v. Norton, 411 F.3d 231, 236 (D.C. Cir. 2005).

The Court then indicated that the prevailing party must be compensated for all the time her attorney spent in achieving the result obtained, even if that party failed to prevail on "every contention." Id.  Furthermore, work on the unsuccessful claim must relate to the work on the successful claim, in order to merit such compensation.  "The fee award, of course, should not reimburse the plaintiff for work performed on claims that bore no relation to the grant of relief.  Such work 'cannot be deemed to have been expended in pursuit of the result achieved.'" Id. (quoting Hensley v. Eckerhart, 461 U.S. 424, 435 (1983).  As the Supreme Court stated in Hensley:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories.  In such a suit, even where the claims are brought against the same defendants–often an institution and its officers, as in this case–counsel's work on one claim will be unrelated to his work on another claim.  Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." Davis v. County of Los Angeles, 8 E.P.D. ¶ 9444, at 5049 (CD Cal. 1974).  The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claims.

Id. at 434-35.

This Circuit has therefore concluded that, when separate legal claims are asserted but are based on the same facts, lack of success on one does not mean that the time spent on other unsuccessful claims should be disallowed. Williams v. First Gov't Mortg. & Investors Corp., 225 F.3d 738, 746 (D.C. Cir. 2000) (award of fees for work on all claims affirmed when claims were not distinctly different); Goos v. Nat'l Ass'n of Realtors, 997 F.2d 1565, 1569-70 (D.C. Cir. 1973) (claims of breach of contract and violation of Human Rights Act based on the same

3

retaliatory discharge were not distinct); Morgan v. District of Columbia, 824 F.2d 1049, 1065-67 (D.C. Cir. 1987) (all claims were related because all were based on District's deliberate indifference to a prisoner's safety).  See also Judicial Watch v. DOC, 470 F.3d 363 (D.C. Cir. 2006) (compensation for all discovery efforts, while unsuccessful, permitted when all related to Freedom of Information Act claim); Amer. Petroleum Inst. v. EPA, 72 F.3d 907, 911-12 (D.C. Cir. 1996) (although plaintiffs argued five grounds for the invalidity of the regulation, they asserted a single indivisible claim–the invalidity of the regulation).  It is only when the unsuccessful claim is based on a different set of facts and a different legal theory that Hensley requires that the fees pertaining to the unsuccessful claim be disallowed. Trout v. Sec. of the Navy, 540 F.3d 442, 447 (D.C. Cir. 2008) (unsuccessful claim for pre-judgment interest distinct from successful sexual discrimination claim); George Hyman Const. Co. v. Brooks, 963 F.2d 1532, 1540 (D.C. Cir. 1992) (total and partial disability claims were based on different factual theories).

The following chart lists the claims made in plaintiff's second amended complaint, which was filed on October 29, 2002, and their ultimate outcomes.

| Count I | Denial of due process | Failing to enforce the September 1995 Summary Determination and Order by the District of Columbia Office of Human Rights (OHR), which concluded that MPD had discriminated against plaintiff on the basis of his national origin | Dismissed on June 6, 2007 |
|---|---|---|---|
| Count II | Denial of due process | Failing to hold a hearing on plaintiff's second OHR complaint before making a finding of no probable cause | Dismissed on June 6, 2007 |

| Count III | Violation of Title VII and 42 U.S.C. § 1981 | Transferring plaintiff from the Office of Internal Affairs (OIA) to street duty after his 1994 promotion | Jury verdict for the District |
|---|---|---|---|
| Count IV | Violation of Title VII and 42 U.S.C. § 1981 | Denial of plaintiff's request to be transferred back to OIA | Jury verdict for the District |
| Count V | Retaliation in violation of 42 U.S.C. § 1981 and D.C. Human Rights Act | Failure to transfer plaintiff back to OIA | **Jury verdict for plaintiff in the amount of $180,000**<br><br>**Plaintiff accepted court-ordered remittitur of $90,000** |
| Count VI | Denial of due process | Failing to enforce November 1, 1995 OHR Letter of Determination, which found probable cause that plaintiff was subjected to unlawful discriminatory and retaliatory employment practices | Dismissed on June 6, 2007 |
| Count VII | Retaliation in violation of 42 U.S.C. § 1981 | Repeated denials of plaintiff's request to be transferred back to OIA | Dismissed on June 6, 2007 |
| Count VIII | Denial of due process | Failing to reinstate plaintiff within 30 days of his acquittal on criminal charges | Dismissed on June 6, 2007 |
| Count IX | Retaliation in violation of 42 U.S.C. § 1981 | Refusal to return plaintiff to full duty and pay within 30 days of his acquittal on criminal charges | Jury verdict for the District |

| Count X | Discrimination and retaliation in violation of 42 U.S.C. § 1981 | Denials of plaintiff's requests to participate in the Take Home Cruiser Program and a break in to plaintiff's office | Partially dismissed on June 6, 2007 (solely that portion alleging a retaliatory office break in)<br><br>Discrimination and retaliation claims respecting Take Home Cruiser Program and office break in withdrawn by Joint Motion to Amend the Pretrial Statement [#119] at 1. |

Defendant District of Columbia's Opposition to Plaintiff's Motion for Attorneys' Fees [#174] at 3-4.

     I conclude that the District is correct insofar as it asserts that time spent on Counts I, II, VI, and VIII were premised on an independent violation of due process and were based on the District's failure to 1) enforce an OHR finding; 2) hold a hearing before dismissing plaintiff's second OHR complaint; 3) enforce an OHR letter of determination; and 4) reinstate plaintiff within 30 days of his acquittal. These claims, and the facts upon which they were based, are entirely different from the retaliation and discrimination claims that were submitted to the jury. On the other hand, counsel's work on Counts III, IV, IX and X (before it was withdrawn) was premised on what plaintiff claimed were a pattern of discriminatory and retaliatory acts against him based on his national origin, and his complaints of discrimination.

     Specifically, plaintiff's first motion for partial summary judgment sought a determination that plaintiff's due process rights were violated by OHR when it determined, without holding a hearing, that he was not retaliated against for filing a discrimination claim. Memorandum in

Support of Plaintiff's Motion for Partial Summary Judgment [#8-1] at 1. That motion was denied without prejudice to filing a renewed motion, so that precise references to deposition testimony could be provided. See Order [#23] at 1.

Plaintiff's second motion for partial summary judgment proffered the same argument as the first, that plaintiff was denied a property right when the OHR made a decision without first holding a hearing. See Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment [#24-1] at 1. This motion was denied, not on the merits of plaintiff's due process claim, but rather, on the grounds that plaintiff's claim was based on disputed facts. Memorandum Opinion and Order [#30] at 11.

In plaintiff's third motion for partial summary judgment, plaintiff argued that his due process rights were violated when the District failed to comply with the OHR's September 19, 1995 decision awarding plaintiff back pay and overtime compensation and mandating that the District promise not to retaliate against him. Plaintiff's [Third] Motion for Partial Summary Judgment [#91] at 17-18. As with plaintiff's earlier motions for partial summary judgment, this motion was also denied.

With respect to Count I, the Court concluded that plaintiff's claim was not a substantive due process claim but rather a claim that a D.C. agency failed to follow D.C. law and, as such, should have been brought before the local D.C. courts. Opinion [#101] at 17.

Finally, plaintiff's motion for a preliminary injunction was filed for the purpose of enjoining the District from "taking any further adverse action against the plaintiff while the instant case [was] pending." Plaintiff's Motion for Preliminary Injunction [#71] at 1. Specifically, plaintiff sought to prevent the District from proceeding with a termination hearing

based on two criminal indictments while the current suit, which alleges discrimination and retaliation, was pending. Memorandum Opinion and Order [#83] at 1-5. The Court denied the motion on the ground that plaintiff failed to establish that he would suffer irreparable harm if an injunction were not granted. The Court noted that because "the [OHR had] yet to make and may never make, a final decision to terminate him, and [because] the harms alleged are almost exclusively financial," there was insufficient support for a preliminary injunction at this stage of the proceedings. Id. at 13.

As is clear from the above review, the work performed on the motions just specified and explained, did not advance in any way his success before the jury. In finding for plaintiff as to Count V, the jury found that plaintiff established by a preponderance of the evidence that 1) "the denial of his application to return to the Office of Internal Affairs in 1998 and the selection of a white officer denied him equal protection of the laws by retaliating against him for having filed complaints complaining of discrimination on the basis of his national origin"; 2) "the denial of his application to return to the Office of Internal Affairs in 1998 and the selection of a white officer was based on a custom or practice of retaliation against persons who complain of discrimination based on national origin"; 3) "a reasonable employee would have found the MPD's denial of his application to return to the Office of Internal Affairs in 1998 and the selection of a white officer a materially adverse action"; and 4) "the MPD's denial of his application to return to the Office of Internal Affairs in 1998 and the selection of a white officer was done in retaliation for his making complaints of discrimination." Verdict Form [#131] at 3-4.

Count V of plaintiff's second amended complaint was focused on the District's response to plaintiff's application to transfer back to OIA following plaintiff's claim that he was

discriminated against on the basis of his national origin (Puerto Rico). The focus of plaintiff's motions for partial summary judgment, on the other hand, was on the District's alleged failure to comply with an OHR determination. Thus, even though the OHR determination was itself based on a finding that plaintiff had been discriminated against because of his race (Hispanic), plaintiff's summary judgment motions were based on an entirely different legal theory–that plaintiff had a property interest in the right to have the OHR's order followed by the District and that the District denied his substantive due process rights by failing to comply with that order. See [#91] at 14-15.

Finally, although the motion for a preliminary injunction focused, as it had to, on the standard governing the imposition of a preliminary injunction, which includes an analysis of whether the plaintiff is likely to prevail on the merits, plaintiff states only that "the best evidence of this likelihood [of success] is the irrefutable fact that on two occasions Medina has already prevailed, proving that he was the victim of discrimination at the hands of the Defendant." [#71] at 10. But that he was ultimately successful before the jury does not somehow make the work on the preliminary injunction, based on different facts and legal theories, compensable.

I therefore conclude that all of the time spent on the following motions, which totals 106 hours, must be disallowed:[3]

| June 16, 1997 - June 20, 1997 | "Draft and review of Plaintiff's Motion for Partial Summary Judgment." | 25 hours |
|---|---|---|
| June 23, 1997 | Plaintiff filed Plaintiff's Motion for Partial Summary Judgment [#8]. | n/a |

---

[3] The descriptions of the work performed by plaintiff's counsel are taken from his time sheets. See [#173-5].

| October 20, 1997 | "Received and reviewed Defendant's Opposition to Plaintiff's MSJ." | 2 hours |
|---|---|---|
| October 21, 1997 - October 28, 1997 | "Research regarding reply." | 10 hours |
| October 30, 1997 | "Drafted reply." | 3.5 hours |
| February 19, 1998 - February 20, 1998 | "Drafted, prepared filed plaintitf's [sic] motion to supplement the record." | 4 hours |
| March 19, 1998 | Judge Sullivan denied [#8] at Order [#23]. | n/a |
| March 23, 1998 | "Reviewed court's order/denied plaintiff's MSJ and get new dates." | 0.5 hours |
| April 20, 1998 - April 24, 1998 | "Research, prepared renewed Motions [sic] for Summary Judgment." | 25 hours |
| April 30, 1998 | Plaintiff filed Plaintiff's [Second] Motion for Partial Summary Judgment [#24]. | n/a |
| May 22, 1998 | "Received and reviewed Defendant's Opposition." | 3 hours |
| March 31, 1999 | Judge Sullivan denied [#24] at Memorandum Opinion and Order [#30]. | n/a |
| April 2, 1999 | "Received and reviewed court's order/memo denying plaintiff's motion for summary judgement [sic], communicated with client." | 2.5 hours |
| February 29, 2003 - March 3, 2003 | "Research, draft plaintiff's motion for preliminary injunction." | 12.5 hours |
| March 3, 2003 | Plaintiff filed Plaintiff's Motion for Preliminary Injunction [#71]. | n/a |
| March 20, 2003 | "[R]eview of DC opposition to Plaintiffs [sic] motion for preliminary injunction." | 3 hours |
| June 2, 2003 - June 6, 2003 | "Research, draft of reply to DC's opposition to Plaintiff's motion for preliminary injunction." | 15 hours |
| July 29, 2003 | Judge Sullivan denied [#71] at Memorandum Opinion and Order [#83]. | n/a |
| January 18, 2005 | Plaintiff filed Plaintiff's [Third] Motion for Partial Summary Judgment [#91]. | n/a |

10

| June 6, 2007 | Judge Sullivan denied [#91] at Opinion [#101]. | n/a |

    C.    Document Review

The District contends that plaintiff's request for reimbursement of $46,158.75 for 93.25 hours of "Document-review-Summation" is excessive, and should be reduced by 60%. [#174] at 16. Thus, the District contends that plaintiff should be awarded $18,463.50 rather than $46,158.75. Id. In support of its argument, the District claims that plaintiff's billing records are too vague in that they identify a particular task as "Document review-Summation," "Review Document-Summation," or "Review Summation documents," without providing any further detail. Id. at 16-17. Plaintiff's counsel argues that he used "Summation" and "Trial Director," the latest trial software, in reviewing the documentary evidence, thereby "saving hundred of hours of attorney and paralegal time" for this task. [#175] at 7.

In its discretion, the Court will not arbitrarily reduce the number of hours spent on document review but will reduce the rate at which that work will be reimbursed. Rather than reimbursing that work at the hourly rate for an attorney, the Court will use the Laffey rate set for paralegals and law clerks for 2011-2012. Thus, for 93.25 hours of document review, plaintiff will be reimbursed at a rate of $140 per hour, for a total of $13,055.00.

    D.    Reduction in Award of Attorney's Fees

In its motion, plaintiff seeks a total of $493,746.00 in attorney's fees. [#173-1] at 4. The District counters that plaintiff is only entitled to an award of $206,790.00 in attorney's fees. [#174] at 1. Pursuant to the above analysis and the Court's independent calculation of attorney's fees, provided in Attachment A, the Court has initially arrived at a figure of $406,991.00.

As the Supreme Court recently emphasized, determining the proper fee in a case where a party makes related unsuccessful and successful claims is not a lapidary judgment. Instead, it requires the careful exercise of discretion by the judge who has lived with the case on a daily basis. Fox, 131 S.Ct. at 2216 ( "The essential goal in shifting fee . . . is to do rough justice, not to achieving auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."). The result achieved is a crucial consideration. Hensley, 461 U.S. at 434 (Results obtained is particularly crucial when plaintiff prevails only on some of her claims for relief.).

On the one hand, this was an extraordinary case. There are (thankfully) few cases in which one's client is indicted in the middle of the case. While everything worked out ultimately to plaintiff's benefit, his counsel is certainly to be commended and fairly compensated for his loyalty to his client and to his persistence on plaintiff's behalf under extremely unfavorable circumstances.

Additionally, this case was well tried by both counsel. In my view, the evidence supporting plaintiff's case was not strong and it took that kind of excellent advocacy to achieve the verdict plaintiff received. Plaintiff's "problem" (a nice problem to have) was that he has risen rapidly and successfully to the very upper echelons of the Police Department. The District argued compellingly that it was inconceivable that plaintiff could have advanced as fast and as far as he did if he was the victim of discrimination. The jury seems to have accepted that contention, finding for plaintiff only on his retaliation claim, and awarding what has to be considered a relatively minor amount of damages. Achieving that in the face of plaintiff's rapid rise in the Police Department and the general weakness of his case was a substantial

achievement.

On the other hand, the result achieved was not very great. While I viewed the violations of Title VII and the D.C. Human Rights Act as two distinct claims, the court of appeals reversed me and found only one. Thus, plaintiff prevailed on a single count of retaliation, which is only one of the ten counts he pressed. He was not entitled to back pay and, as I have just noted, the jury award was small.

Weighing, on the one hand, the excellence of plaintiff's counsel's advocacy, his loyalty to his client over more than a decade of litigation, and his success in securing a favorable verdict against his failure with respect to nine of the ten counts presented as well as the limited relief plaintiff secured, I believe that an unadjusted award of $406,991.00 is simply too great. It is more than four times the jury award, and I cannot see any justification for such a disproportion between result and fee. I therefore will, in my discretion, award $300,00.00, an amount that, in my view, is generous to plaintiff's counsel and will continue to attract equally competent counsel to future Title VII cases.

Finally, I note that I am motivated to reduce plaintiff's counsel's fee because of the likelihood that prior to June 6, 2007, the date when Judge Sullivan dismissed plaintiff's due process claims, plaintiff's counsel spent time working on those unsuccessful claims, even though that time is not reflected in his billing entries. While I have already deducted compensation for entries that specifically relate to work on these due process claims, I certainly cannot conclude that every other minute prior to June 6, 2007 was spent solely on plaintiff's discrimination and retaliation claims. Ultimately, however, plaintiff's counsel bears the burden of proving his entitlement to fees by submitting detailed entries that would permit the court to identify the total

amount of time spent on each claim. See Nat'l Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1326-27 (D.C. Cir. 1982). Here, the entries do not permit such a distinction. Therefore, I will reduce plaintiff's counsel's fee to an amount that I consider fair, given the time spent by counsel on the case and the results he achieved.

    E.    <u>Costs</u>

Finally, the District argues that plaintiff should not be reimbursed for certain costs associated with the service of subpoenas, witness fees, and deposition transcripts.[4] [#174] at 20. Specifically, the District claims that plaintiff is not entitled to reimbursement for $2,188.00 in costs associated with the following individuals, because none of them were called to testify at trial. Id. at 20-21:

|    | Witness | Date | Subpoena Fee | Witness Fee | Total |
|----|---------|------|--------------|-------------|-------|
| 1. | Patricia Alexander | 7/18/08 | 114.00 | 40.00 | 154.00 |
| 2. | Luperico Rivera | 6/23/08 | 40.00 | 40.00 | 80.00 |
| 3. | Guy Middleton | 7/2/08 | 104.00 | 40.00 | 144.00 |
| 4. | Tony Giles |  | 60.00 | 40.00 | 100.00 |
| 5. | John Simmons |  | 60.00 | 40.00 | 100.00 |
| 6. | Frank Santiago |  | 60.00 | 40.00 | 100.00 |
| 7. | Joshua Ederhelmer | 6/26/08 | 100.00 | 40.00 | 140.00 |
| 8. | Martha L. Herzing | 6/26/08 | 63.00 | 40.00 | 103.00 |
| 9. | Julie Anderson |  | 60.00 | 40.00 | 100.00 |

---

[4] Although the District initially claims that it is seeking a reduction in costs associated with deposition transcripts, it makes no further mention of deposition transcripts in its opposition and does not identify any deposition transcript fees in its chart, identified as "Attachment 4." See [#174-1] at 5.

| 10. | Danny Clark Gregg | 6/26/08 | 100.00 | 40.00 | 140.00 |
|---|---|---|---|---|---|
| 11. | Raymond Corey | 7/9/08 | 75.00 | 40.00 | 115.00 |
| 12. | Hiram Rosario | 7/11/08 | 239.00 | 40.00 | 279.00 |
| 13. | Kim Gregory | 7/1/08 | 140.00 | 40.00 | 180.00 |
| 14. | Christopher Cummings | 7/14/08 | 104.00 | 40.00 | 144.00 |
| 15. | William Bailey | 7/16/08 | 210.00 | 40.00 | 250.00 |
| 16. | Ralph Harmon | | 19.00 | 40.00 | 59.00 |
| | | | 1,548.00 | 640.00 | 2,188.00 |

Pursuant to Rule 54 of the Local Rules of Civil Procedure and Section 1920 of Title 28 of the United States Code, included in the list of taxable costs are the cost of serving a subpoena on an individual who testifies at a deposition, hearing, or trial, as well as witness costs. See LCvR 54.1(d((11); 28 U.S.C. § 1920 (3). According to plaintiff's fee petition, each of the sixteen individuals listed above were served with a "Subpoena for Trial."[5] [#173-8] at 1. Although neither the Local Rules nor the United States Code mandates that the subpoenaed witnesses specifically testify *at trial* in order to justify reimbursement, when the subpoena is issued specifically *for trial* and the witness does not testify, the Court is within its authority[6] to deny such recovery. See Long v. Howard Univ., 561 F. Supp. 2d 85, 98 (D.D.C. 2008) (denying recovery for service of a subpoena *duces tecum* on an individual who did not testify at a deposition, hearing, or trial).

---

[5] Plaintiff identifies the dates of service of the subpoenas as ranging between June 23, 2008 and July 16, 2008. [#173-8] at 1. Trial in this case began on July 21, 2008 and concluded on July 28, 2008.

[6] The apportionment of costs is within the "sound discretion" of the court. Moore v. Nat'l Ass'n of Sec. Dealers, Inc., 762 F.2d 1093, 1107 (D.C. Cir. 1985).

Like subpoenas, witness fees are also expressly authorized. See LCvR 54.1(d)(10); 28 U.S.C. § 1920 (3); Youseff v. FBI, 762 F. Supp. 2d 76, 88-89 (D.D.C. 2011). Witness fees are usually limited, however, to the days the witness "necessarily and reasonably attended" the trial as a witness. Belfiore v. U.S. Merit Sys. Prot. Bd., No. 84-CIV-3877, 1987 WL 10234, at *2 (D.D.C. 1987). See Kakeh v. United Planning Org., 657 F. Supp. 2d 15, 18 (D.D.C. 2009). Because plaintiff did not, in either his motion for attorney's fees or his reply, indicate whether and under what circumstances the individuals listed above attended the trial, the Court will disallow both the claimed subpoena and witness fees.

## CONCLUSION

Plaintiff is entitled to an award of $300,000.00 in attorney's fees and $3,243.00 in costs. An Order accompanies this Memorandum Opinion and the Clerk is directed to enter judgment in accordance with this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE